Good morning, Your Honor. My name is Chen Jeong, representing plaintiffs in this case, and I'd like to reserve four minutes, if I may. And so this case is about two major issues about federal claims on the FLSA, whether these plaintiff employees were exempt employees, and whether for their kind of action for kind of protecting their interests and rights, there was a retaliation. So we've carefully read the briefs, and we're familiar with the facts. What trips me up on this case is you have to do some reverse engineering about whether the declarations were considered or not, whether they were admitted or not, because we have to figure out whether they're disputed issues of fact. What's your take on what the district court did with the plaintiff's declarations? Plaintiff's declarations. I mean, generally, I don't we, you know, think they are all the admissible testimonies, and then so any... Well, the question I think that we're wrestling with is whether the district court held or did not hold that the declarations of your clients were inadmissible, and I know you wouldn't agree with that, but we're just right now trying to figure out if the district court, without explaining itself completely, decided not to consider those declarations for the reasons that were argued about there not being a verified translation and so on.  We did not have any issue about the translation issues, and these testimonies are consistent with the deposition transcripts that was... Well, there was an argument made that the declarations should not be considered for the reason that there was no certification of their translation from Korean into English, because your clients don't speak English. And so there's no explicit ruling from the district court, and we're trying to figure out if, in fact, the court nevertheless ruled that they were inadmissible. Yes. Generally speaking, if we really see any inconsistency or any really changes of the statement, which we find, in fact, in the Mr. Shim, the defendant's declaration, that's directly inconsistent with his deposition testimonies. But plaintiff's testimonies are just one of those stories that was always said, and that was always explained during the discovery. Did the district court accept that? Did he accept those declarations? Unfortunately, Judge Walter was not being clear about that in his ruling, so he was saying to the extent reasonably proper... We're trying to figure out what that means. I don't understand what that means. We are having a hard time understanding it either, Your Honor. Is it your position there was no discrepancy, no difference between the declarations and the deposition testimony? And also, I mean, I personally, you know, was involved in the preparing the declaration procedure. So my question is really specific. I'm going to interrupt you because I have to break this down. Sure. Forgive me, but is it your argument that there was no difference between the declarations and the deposition testimony? Generally speaking, that is my understanding, Your Honor. So they have been always consistent about their stories. And then if there was, like Your Honor said, no clear rule about how we should deal with this, and then we could have kind of had another little discussion about whether these testimonies partially or entirely should be taken or just rejected. And there was no such discussion at all. I mean, there was no ruling whatsoever. It's about... I understand. So I'm going to ask you my next question. Sure. Is it your argument, do you argue, that the declarations were properly authenticated, properly certified? Yeah, if there was a concern about that, I mean, we could have... Okay, different question. My question is, are you arguing they were properly authenticated, certified? That is correct, Your Honor. Where in the record is the certification? Can you point us in the record to where the translations were certified as accurate? That was, we don't have that paper on the record, Your Honor, because we did not separately prepare this. But I do federal cases a lot. And we did, even in this same case, we never had that issue at all. And this is just out of the blue for the first time, all of a sudden. You mean it wasn't argued in the district court? Yes, in the district court. And I have a lot of cases, you know, we submit, like, just, you know, foreign language speaker, like, declaration without certificate. I never had a real issue about that at all. Okay, so I'm asking a different question. In this case, in the district court, was there not... wasn't this a dispute about whether the declarations were admissible? In the same case, we submitted multiple declarations, but we never had that issue. So this was, like, really out of the blue. Just, you just read about it for the first time in the judge's order? Yes, Your Honor. So even during the hearing or even before that, there was no indication that this could have been an issue at all. And like I said, there were, like, you know, other motions in the prior, in the prior history of this one case, the same case I'm talking about. And then there was no real issue whatsoever about this certification issue. So we were just doing it as we have been doing all the time. If I may. So generally speaking, this is, like, for exemption, they need to show primary duty, like management duty being primary duty for executive exemption. So what primary really means, that's very fact-intensive question. Fact-intensive, and it seems there's a dispute of fact if one considers the declarations. That's why it's so pivotal. I'm just speaking for myself, but that's why it's so pivotal to know whether or not those declarations could have been properly excluded. Right. So, like I said, that, I think, in other evidences even provided by the defendants, it also shows that these facts are kind of disputed when it comes to whether there was really two or more employees that was primarily or customarily under their supervision. Can I ask you a question? Sure. If the declarations were excluded, did the district court have any other admissible evidence that went to the issue about what functions your clients were actually performing? BPRs. I'm sorry? They have this, it's called BPRs, the exhibit, I think, 51 through 54. That's around the records page number, like, 1,800, like, 54. And then if I may be more specific. Is that the 9089 forms? Yes, that looks like this, generally. Is that just the immigration form? It's not the immigration form. Are you talking about the immigration forms, or you're talking about the daily logs? Work logs. Yeah, written work instruction about how, like, what temperature, what, how. Right, the daily logs that they kept. Okay. Yes. Anything else other than that? Weren't there the 9089 forms, the immigration forms? Yes, Your Honor. So that is, in fact, like we said in the brief about maybe arguably their plan about what they were going to do. But whether they really, in fact, what did they do is the question. So in that sense, that's totally irrelevant question. Or maybe, yeah, but so. Irrelevant to the question of what they actually did. It's just what they intended to do. Right. And they had nothing else. So the district court had nothing else except the declarations and those, and the work logs, and then the anticipatory statements from the, in the immigration context. Is that it? Am I understanding that? So, I mean, based on their own exhibits only, generally, just work schedule, which is, I mean, I would say exhibit four and five, that's warning letters. That shows retaliation. The question is about what they did. Right? So in such a case, exhibit nine, the issue is like pyramid like this. And then they are saying these six persons are the managers, and then others are just non-managers. And then, but it includes Mr. Hong. And that was getting the warning letter in retaliation for joining this plaintiff's action for protecting the rights and interests. And also, and yeah, like I said, from our exhibits for plaintiff's side, I, by myself, submitted my declaration to lay foundation for our evidences. That's generally what was produced by the defendants. That includes BPRs and the pictures BPRs showing about their production work schedule. So most of these exhibits on paper we submitted from 51 through the end are based on what they have produced in this action. And then for which I lay foundation. So we have tons of like written documentary evidences that will show what they were doing. If you want to look at the BPR, and then that is based on Mr. Shim, the defendant's testimony or admission saying they work on the machine, with the machine, the manual labor. And they, on the real-time basis, they sign it. And all these signatures are on 51 through 54 showing what they really did. And the so-called operators, non-managers, they are, their signatures are also appearing on the same papers. It's like he did work, and they did work, so there was no really difference when it comes to their daily manual labor, like work hours. It also shows during these 12 hours what they have done. Like every two hours they were checking on weight, temperature, and they supplemented materials, and they did something, you know, so-and-so. And that all shows how busy they were in working on this, like, machine, and then making capsules, not just folding arms like this and then supervising others. Thank you. Counsel, I think you wanted to save some rebuttal time. Sure. Thank you. Good morning, Your Honors. My name is Tom Fay. I counsel for the defendants and appellees in this matter. May it please the Court. I wanted to first start by responding to a few of the questions and points raised during appellant's counsel's portion of the argument. The first being Judge Christen's question that plaintiff's declarations, whether or not the Court ruled on that issue. I think it's clear from the Court's statement of decision that the Court, in fact, did not rule on that evidentiary objection either way, whether to sustain it or to overrule it. The Court instead concluded that it didn't need to reach that question because the plaintiff's declarations were not material, in that they did not directly contradict the management duty declarations and the management duty. But they do seem to create some potential factual issues on some of the criteria under the appropriate exemption. What I found confusing in the district court's order was the court first said, to the extent that the court has relied on evidence to which the parties objected, the court has overruled the objections, and as to the remainder, the court finds it unnecessary to rule because the disputed evidence wasn't relied on. And so I can't parse that to figure out whether that means that the judge did or didn't consider the declarations, because it may make a difference to the outcome. And so I'm trying to figure out what we should do with that, because there was an objection lodged with the district court on that ground, that they were not properly authenticating the translation. So what are we supposed to do with that? Well, I think this goes to the materiality question. I think the court concluded that the portions of the plaintiff's declarations that addressed the management duties question fell into one of two categories. Either they contradicted the verified statements that the plaintiffs made in their Form 9089s, in which case the plaintiffs were judicially stopped to make that statement, or they were not contradictory of the management duties. Well, just speaking for myself, I have difficulty with the estoppel ground, because the immigration documents were a statement of intention as to future actions, which are not contradictory. I mean, you may intend to play tennis and, you know, you hurt your arm and you don't play tennis, but they're not contradictory. And so leaving that aside, what are we left with? Well, if I may just clarify one point on that, Your Honor, before I turn to the second part of this. The immigration documents, the Form 9089s, don't just refer to future work. These documents were prepared after plaintiffs had already started working at UNICAPS. Your Honors will note that Section K refers to their work experience and their current experience at UNICAPS now, at the time they're signing the form. They verified under penalty of perjury. This is what we're doing right now. So people who don't speak English verified under penalty of perjury. This is what we're doing now. And that's do you want to move on to your next argument? Sure. The next argument, Your Honor, is that I think it's clear, again, that the Court did not find these to be material. There was no specific ruling as to the evidentiary objection in question. So is it your argument, Counsel, that even if the Court considered those plaintiffs' declarations, the declarations do not raise an issue of fact? They raise certain factual issues that do not constitute material issues of disputed fact for the purpose. Why not? They characterize their duties very differently, and it seems that it goes to the employer exemption. So I'm trying to figure out how is that not a genuine issue of material fact? Well, I would agree with Your Honor's statement there that it's a characterization. It's not a statement of we did a different thing. They concede in their declarations to a certain extent that they did some training, that they did some supervision. Their deposition testimony is also clear that they delegated work amongst the operators and they don't dispute that. They don't deny it. What they do say in their declaration is we spent a lot of time on menial labor. We can't quantify how much that was. We think it was most of our time. But that by itself is not enough for them to. But all of it combined, I mean, how does that not create a genuine issue regarding the employer exemption? I mean, it seems, I mean, it's a really interesting case because it seems at one point your clients are acknowledged that you are going to need to proceed to trial because you didn't think there were any questions of material fact or your clients didn't. It looks like on the eve of trial the judge called people in and said, you know, I'm requiring you to file motions and you did. And then we have this order that's a very interesting order and the ruling on the objections is suboptimal and far from clear. And all of a sudden the decks were cleared. So, I mean, it's very suspect here what's going on. I just, I can't make out what the order is regarding the objections. I can't make it out and you have just acknowledged that he didn't rule on those objections. It seems to me that there is these competing descriptions of what their job duties were. I don't know how this avoids going back to the court. But I'm speaking for myself. But I want to give you the best opportunity possible to respond to that. Sure, Your Honor. I think the controlling case here in this circuit is Baldwin v. Trailer Park Inn. Which one? Baldwin v. Trailer Park Inns. And in that case, this Court held that just because, and I want to emphasize the key point in plaintiff's declarations, the key disagreement, if there is one, about the nature of their duties is they say, yes, we did management work. Yes, we did some training. Yes, we did certain amounts of this. But we did a lot of manual work, too, side by side with the other employees. Exactly. And the Baldwin v. Trailer Park Inns case says that's not enough to get outside the executive exemption. Can I ask you another question? Is it your understanding of the legal issues that are in front of us that the plaintiffs are arguing about other aspects of the exemption as well, or is their sole argument about the nature of the duties? Well, I think plaintiff's briefs clearly address the two of the other prongs. The salary prong is undisputed. The other prongs that are addressed by the plaintiff's briefs, at least, are the supervision of two or more employees and the authority to hire and fire. I'd like you to address the authority to hire and fire, because that seems to me to be potentially the weakest link from your side of the case, because there's only, I think, one of the plaintiffs that testified directly, if I may be misremembering this, about having recommended someone to be hired or rehired who was hired or rehired. And what is why is summary judgment in your favor appropriate on that element? I think the answer to that, Your Honor, is that all three of the plaintiffs acknowledged that they were regularly asked by General Manager Schimm to give evaluations of their subordinate operators. And those evaluations, I think, Mr. Schimm. But that's different. Evaluating and hiring and firing are not necessarily linked. That's true. I would point also, however, to a document that's in the record in which, which is sort of a notice to one of the operators, I believe his name is Nelson Contreras, if I recall correctly, in which one of the plaintiffs, Mr. Schimm, signed a document that he admitted in deposition he had translated for him. Yeah. It was warned that if you don't shape up, you're going to get fired. Right. He threatened an operator with firing. And this, it was, it's clear from both the deposition testimony and the admissions by the plaintiffs that they regularly were asked by General Manager Schimm to provide this feedback that should it reach the point where discipline was necessary, should it reach the point where somebody needed to be fired, they were the conduit of that information to General Manager Schimm. Plaintiff Cho specifically testified to that. Excuse me.  You quoted Baldwin. It seems in Baldwin the plaintiffs had responsibility over the day-to-day decisions of the park, had discretionary power in managing the park, and worked pretty free of supervision. Here it seems like, and if we take, which we have to, the facts in the light most favorable to the plaintiffs. Don't you agree? We have to do that. To the extent there are disputed issues in material fact, yes. So they contend they spend most of their time on manual, non-exempt tasks. They also say that they're, describe their duties as having little control over the decision-making at UNICAPS because of this General Manager Schimm met with them every day to give them, you know, detailed instructions. And apparently Mr. Schimm checked on the plaintiffs three to four times per day. So I'm trying to figure out how Baldwin helps you. I think the answer to that is that the plaintiffs are comparable to the plaintiffs in Baldwin in that during at least the night shifts they were the highest supervisors on site, the highest position of authority on site. No one was watching over their shoulder at those times, and they had a great deal of discretion with controlling breaks and timing and delegating tasks to operators and all the sorts of supervision that they were expected to do as managers during those times. That sounds like a good argument for the jury. I mean, I just don't see how that will maybe here at this stage when you have to look at it in the light most favorable to the plaintiff, but I just wanted to hear what your best argument was on that. Well, it's more than an argument for the jury. The fact that they were unsupervised at that time, the fact that they did delegate these tasks to operators, that they did control breaks, those facts are undisputed, and those facts by themselves are sufficient to bring us into the ambit of the Baldwin-type situation where you have an unsupervised manager who is controlling and directing subordinate hourly employees. That's where we are, just as we were in Baldwin. But Baldwin talks about the relative importance of the Baldwin's managerial duties compared to their non-exempt duties. It's very factually specific. Your Honor, that's true, but it was also a summary judgment case in which summary judgment was granted for the defendants. Yes, but only after a whole lot of factual parsing. That's true here, too, Your Honor. It's certainly the case. Well, that's why it matters whether we can figure out whether those declarations were admitted or not. Right. I understand that. And your position seems to be even if they were admitted, you win. Well, I think that's right, but I want to, just to return to that point, I think the issue of whether or not the declarations should have been admitted is because it was not ruled on by the trial court is a de novo issue for this Court. There is no abuse of discretion standard to be applied because there's no evidence. Why would we rule on that in the first instance? It is a matter of discretion for a district court to determine whether, in all the circumstances, they're considered sufficiently reliable or maybe additional information can be presented to the district court on reliability, authenticity, and so forth. Why would we do that? Well, I think, again, the answer there is we are here on appeal, having not had a ruling on that. Well, that may mean that we have to make the district court rule, but I don't understand how we could rule on an evidentiary objection. Well, in any event, I don't think it's – I don't think the record reflects that the Court ruled on this objection. Okay. I don't think that's a fair question. Supposing counsel seemed to suggest that there was – this really wasn't teed up, that the objection on the basis of the translation wasn't really engaged below. Is that right? That's totally wrong. An evidentiary objection was specifically raised in writing to the Court, and this issue was clearly teed up, not least of which by the fact that numerous documents in the underlying motion for summary judgment itself had these sorts of certified translations attached had to, to be admissible. So that was in document number 244. I think your objections to the – anyway. You filed objections to their response to your motion.  Our problem is the lack of ruling, but go ahead. I have a question regarding the employer's determination because it seems – or if you can explain to me how Mr. Kim and Shim are not the plaintiff's employers for FLSA purposes because I think we have a case. Is it Busher versus Shaw? I don't know if you're familiar. Are we – we're supposed to give an expansive definition to employers. So tell me how they're not employers. I think the answer to that is that the joint employer doctrine is designed for situations where the economic realities are such that the person – it's almost like – I mean, it's not, but it's almost like a species of the alter ego doctrine in that the individual is the same as the entity that's employing the person. And for that reason, there's four factors that are supposed to be considered, and here you have at most one or two that would support it for either of the two plaintiffs – the two defendants, Shim and Kim. Well, but here – and I – because I just want to make sure I understand. I think Mr. Kim is the president and 50 percent owner of Unicaps. He is, Your Honor. And then in his deposition, he explains that the president makes decisions about promotions at Unicaps. I think that's at ER 1819. And it looks like Defendant Shim consulted with Defendant Kim before he fired the plaintiffs. And then with respect to Defendant Shim, he's the general manager at Unicaps. In his declaration, he states he worked closely with plaintiffs. He states in his declaration that he met with plaintiffs daily to discuss problems and give them instructions. He states that he visited the production floor where plaintiffs worked three to four times a day. And he states that he sent plaintiffs the warning letter after they failed to report to work. Right. And those go to – I see how much time is left. If I could just briefly respond. I think Judge Gray will let you respond. Yes, please do. The – those facts support, again, one or two of the four factors to each. President Kim, it's true, has some economic connection with the company through his status as a – indirectly a 50 percent owner. But President Kim is, I think, undisputed, was not sort of the day-to-day controller of schedules and management, which is – that's the factor that's supposed to be considered here. That was General Manager Shim, and he doesn't have that same economic control of the company. Neither of them managed the employment records. They were not the keepers of the personnel file, which is the other major factor. So I think where at most you're talking about one or two factors applying here, the court was correct to conclude that this is just not the situation where the economic realities are such that these two individuals could be deemed a joint employer along with this sort of larger, more managed enterprise.  Thank you, Your Honor. About what they have done, I'd like to highlight a few facts, like based on the documents produced by the defendants for which I laid foundation to my own declaration. First one, the PPR. It has very detailed instruction, like temperature, weight, and how – in what details. Everything is there. And even their interrogatory response admits that. I am looking at and reading it from page 2001. It says, plaintiffs – the warnings were issued because plaintiffs failed to follow directions slash instructions, failed to pay sufficient attention to the detailed PPR process. So that was what they were supposed to do, but they failed to do, and then they got warnings. And also the operator. What they were doing was like what other so-called operators were doing. According to, like I said, the chart on page 337, their categorization of manager versus non-managers. And also work schedule. That's also 1910. There's a work schedule. The organization chart, like to show who are managers, who are not managers. And then Mr. J.H. Kim and also Mr. Jose A. and Mr. K.H. Chung. If you want to look at the work schedule, that's on page 1910 and go on. So 1912 especially, you will see in the same position. It's like two persons are making a pair for each room, and then one is so-called manager and slash there the other one is so-called operator. But in that so-called manager's position, we see Mr. J.H. Kim's name, Mr. K.H. Chung's name, and other so-called operators are taking these positions. What I'm trying to say is if it was something that special, because of that only these managers, so-called managers, were supposed to do it, and then how come these non-managers, other operators, could take their places on a regular basis? You've got to look at the work schedule. They appear on a regular basis. Maybe that's not sufficient enough to grant the MSJ for us, but that is sufficient enough to make a disputed fax for trial. I'm not even relying on my client's declaration at all. It's all based on the papers. And also the officer's liability, the interrogatory answer also admits again about who made a decision about the termination. I'm reading it from 2006. Answer says Mr. Sang Kim, the president, and Mr. Kyu Shim, the general manager, and also Robert Koo, that was human resource manager. And it directly admits they were participating in this decision-making procedure. And also who made these work schedules, by the way, and who made this organization chart, by the way? It was all Mr. Shim, the general manager. And then Mr. Shim said he always gets approval. That's in his deposition. He always what? He always gets approval from Mr. Kim, the president. So that's generally the case. So it's like seeing a manager in the restaurant. Like, you know, whenever I'm sitting in the restaurant, I sometimes think about that. Who's the manager among these servers? There is one manager because president usually designates one. But when it comes to what they actually do, it's all about they are, in fact, serving a lot of times. And then so maybe the so-called manager work is not really primary duty because they are dominant over the dominant amount of time. They are working as a server. Thank you. Thank you, counsel. Your time has expired. We appreciate the arguments from both of you. The case to start is submitted. And we will stand adjourned for this morning's session. All rise.
judges: Graber, Murguia, Christen